LAURA PROULX *vs.* PINKERTON'S NATIONAL DETECTIVE
AGENCY, INC.

Bristol.   November 10, 1961. — December 20, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*False Imprisonment.*

In an action for false imprisonment against the proprietor of a detective agency, a verdict for the plaintiff was not warranted by evidence of the circumstances of an interview between the plaintiff, who was an employee of a store, and two of the defendant's detectives in a room at the store for about an hour, in which she admitted violating a store rule and said she was "quite sure" of improper conduct of other employees, and was given an opportunity to explain reports as to her own conduct.

TORT.   Writ in the Second District Court of Bristol dated July 2, 1958.

Upon removal to the Superior Court the action was tried before *Taveira, J.*

*William J. Fenton,* for the defendant.

*James Seligman & Charles I. Tucker,* for the plaintiff, submitted a brief.

SPIEGEL, J.   This is an action of tort for false imprisonment.   At the close of the evidence the defendant moved for a directed verdict which was denied.   The jury returned a verdict for the plaintiff which was recorded under leave reserved.   Thereafter, the defendant moved that the court enter a verdict for the defendant under leave re-

served. This motion was denied and the case is here on the defendant's exceptions to the denial of both motions and to certain portions of the judge's charge to the jury.

The plaintiff testified that she had been employed at the Fall River store of the J. J. Newberry Company as a clerk from March, 1950, and that on July 5, 1957, she was working at the toy counter. At about 4:30 P.M. on that day she was told to report to the "sign room" which was located on the second floor of the store occupied by the company. There she saw two men who identified themselves as detectives from the Pinkerton detective agency. They told her that a shopper who had made a purchase from the plaintiff reported that the plaintiff did not "ring up" the amount of the sale; that she did not give the shopper a receipt; and that she had kept the money from the sale. The plaintiff told the men that she did not keep the money but had rung up the sale and that she did not give the customer a receipt because the tape on the cash register had run out. She admitted that oftentimes she did not place a receipt in the bag with the article and that she knew this was a violation of the company rule.

The detectives informed the plaintiff that she had been observed "fiddling with the paper bags underneath her counter." The plaintiff explained that she did so in order to keep her counter neat. The plaintiff further testified that she offered to be searched and asked the detectives to search her counter but they refused to do so.

The plaintiff also testified that during the interview she had a conversation with the detectives concerning employees stealing from the company; that they asked her to give them the information regarding the thefts; that she would not give them the information; that she "would not give any names" but was quite sure that "something [was] going over the counter that should not have been going over the counter but she could never prove it." During the course of the interview the detectives left the room for a period of five minutes while the plaintiff remained in the room. When they returned one of the detectives said, "If

you sign this paper, we will let you off easy.'' The plaintiff said, ''I won't sign it, because I didn't do it.'' The detectives left the room again remaining out for about two minutes, during which time the plaintiff stayed in the room. When they returned the plaintiff was again asked whether she would sign the paper. She said ''No'' and one of the detectives said, ''Well, then, as of now you are terminated from Newberry's.'' She remained in the sign room for about one hour. Her normal working hours were from 9:30 A.M. to 5 P.M. On July 5, 1957, she punched the time clock at 5:30 P.M. and received her pay for that day ''including the time up to 5:30 P.M.'' The plaintiff spoke to the store manager about being fired and was informed that the Pinkerton detective agency was employed by the J. J. Newberry Company and that the detectives had the right to fire her.

There was testimony from one of the detectives that the plaintiff was informed that the store had been ''tested by shoppers''; that the reports of the shoppers showed that ''certain policies'' of the store had been broken; and that ''since her name had been mentioned on two or three of the reports they wanted her to clarify the reasons why her name was mentioned.'' They discussed the rule of the company that requires the clerks to place receipts in the packages after the sale and the rule concerning the immediate ringing up of a sale. The plaintiff told the detectives that sometimes she did not get around to ringing up the sale immediately and would put the money on the sill in front of the cash register and would ring up the sale when she got around to it. She also told them that sometimes the customer took the package before she was able to put the receipt in it.

If the circumstances are such that an investigation is warranted, a person may be detained for a reasonable length of time and in a reasonable way. *Standish* v. *Narragansett S.S. Co.* 111 Mass. 512, 517–518. *Jacques* v. *Childs Dining Hall Co.* 244 Mass. 438, 439. Since the plaintiff admitted violating company rules and since there was

evidence that she knew someone was stealing from the company, the defendant had a right to detain the plaintiff for a reasonable time and in a reasonable way in order to make a lawful inquiry and investigation into these matters. Such a right has been established in situations involving suspected shoplifters. G. L. c. 231, § 94B (inserted by St. 1958, c. 337). See Restatement 2d: Torts, Tent. draft no. 1, 1957, § 120A.

The question is, therefore, whether, under the circumstances, the plaintiff was detained in an unreasonable way or for an unreasonable time. *Jacques* v. *Childs Dining Hall Co., supra,* 441.

The plaintiff was informed of reports which showed reasonable cause for her to be suspect and was given an opportunity to explain. She was not accused of stealing. There were no acts of physical force, threats or other conduct that indicate any restraint upon her. The only evidence appearing in the record which conceivably might indicate a basis for any apprehension on the part of the plaintiff was the detective's statement that "If you sign this paper, we will let you off easy." The contents of the paper do not appear in the record. In any event no effort was made to compel her to sign and she did not do so.

On the most favorable aspect of the plaintiff's case, the interview did not exceed one hour. This cannot be deemed an unreasonable length of time in view of her admitted violations of company rules and her statement that she was quite sure that "something [was] going over the counter that should not have been going over the counter." There was no evidence that the plaintiff was not at all times free to leave the premises. See *Sweeney* v. *F. W. Woolworth Co.* 247 Mass. 277, 281.

The defendant's motion for a directed verdict should have been granted. In view of this, it is unnecessary to consider the defendant's other exceptions.

*Exceptions sustained.*
*Judgment for the defendant.*